IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LONNIE HUTCHERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 17-CV-253-SMY-RJD |
| | ) |
| DR. TALBOT, et al,, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Lonnie Hutcherson, a former inmate of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated while he was incarcerated at Robinson Correctional Center ("Robinson"). Specifically, Plaintiff alleges Defendants have been deliberately indifferent in their treatment of his umbilical hernia.

This matter is before the Court on the Report and Recommendation ("Report") of United States Magistrate Judge Reona J. Daly (Doc. 96), recommending granting the Motions for Summary Judgment filed by Defendants Dr. Shah, Dr. Butland, and Dr. Lochard, as well as the Warden of Lincoln Correctional Center (Docs. 87 and 89). Plaintiff filed a timely objection (Doc 97). For the following reasons, Judge Daly's Report and Recommendation is **ADOPTED**.

## Background

In August 2013, Plaintiff was transferred to Robinson from Danville Correctional Center ("Danville") in August 2013. His Reception Screen Report included that he had complaints of stomach pain and was on Prilosec. Later that month, Plaintiff underwent an abdominal ultrasound

which showed no abnormalities.  After reporting that his abdominal pain continued, Plaintiff was seen by Dr. Shah in September 2013 who recommended that Plaintiff drink more water, avoid soda or coffee, and exercise for weight loss.

In October 2013, Plaintiff reported complaints of acid reflux. He was seen by Dr. Lochard on October 30, 2013 who prescribed Pepcid and advised Plaintiff to avoid sweets, chips, and soda. Plaintiff underwent an H. Pylori AG stool test the next day which came back negative.

Plaintiff was seen for follow up by Dr. Lochard in November 2013 and reported that the Pepcid was not helping and that he was experiencing a constant, aching pain. He was diagnosed with dyspepsia and gastroesophageal reflux disease and instructed to continue his medication, to monitor his food intake, to stop consuming citrus juices, and to follow up in three weeks.  Plaintiff continued to complain of pain in November and December 2013.

On January 8, 2014, Plaintiff underwent a routine physical at which time it was noted that he was still taking Pepcid and was positive for H. Pylori.  On January 11, 2014, Plaintiff was again seen for abdominal pain.  Medical records note that he was taking Protonix for H. Pylori.

In April 2014, Plaintiff reported that Protonix was not working.  He also reported that he was active, walked a lot, and drank a lot of water.  A radiologist reviewed Plaintiff's abdominal x-ray in May 2014 and found no small bowel obstruction, no abnormal calcifications in the abdomen, and a non-specific bowel gas pattern.

In May 2014, Plaintiff again complained to Dr. Lochard of ongoing abdominal pain that was present regardless of whether he eats.  Dr. Lochard's examination revealed tenderness in the epigastric area.  He recommended three days of a clear liquid diet and no sweets or coffee.  He submitted a request for permission to conduct contrast x-rays of the upper GI tract on June 9, 2014.

Dr. Lochard, Dr. Butalid and the Utilization Management Physician, Dr. Fisher reviewed

and discussed the request on June 11, 2014. Dr. Butalid reported that Plaintiff's labs were normal. Dr. Fisher denied the request and instead ordered conservative treatment, suggested a check for possible celiac disease, and recommend that Plaintiff try discontinuing different foods to see if there was any improvement. Plaintiff again complained of abdominal pain on June 17, 2014.

In September 2014, Plaintiff was prescribed Zantac due to the failure of Protonix to address his complaints. During an appointment with Dr. Butalid in February 2015, Plaintiff complained of heartburn and reported that the Zantac was not effective. Dr. Butalid prescribed Prilosec.

Plaintiff saw the nurse in December 2015, and it was noted that he had a nickel size mass on the right side near the bottom of his rib cage that was tender to palpitation. In March 2016, Plaintiff reported pain in the right side of his abdomen and the nurse noted the presence of a small gumball size hard nodule on the right side.

In April 2016, Plaintiff reported dull aching, burning and pressure in his abdomen. The nurse noted that the nodule had increased in size. Plaintiff stated he had been given Ibuprofen and Tylenol for it and they did not help. The nurse advised Plaintiff to avoid heavy lifting and recommended a physician referral.

Plaintiff underwent a CT Scan of his abdomen ordered by Dr. Shah at Crawford Memorial Hospital in July 2016. The scan revealed no acute inflammatory process or obstructive uropathy, no abscess, bowel obstruction or adenopathy in the abdomen, normal gallbladder, a small fat-containing umbilical hernia, degenerative changes in the spine, and a normal appendix.

In August 2016, Plaintiff was transferred from Robinson to Lincoln Correctional Center ("Lincoln"). It was determined that Plaintiff's condition did not prevent him from performing any work assignments at Lincoln.

According to the medical records, Plaintiff continued to report complaints of abdominal

pain from August 2016 through May 2017. On December 21, 2016, a physician noted the umbilical hernia "may not be cause of 5-year pain." On January 20, 2017, the physician noted, "abdominal pain unrelated to tiny U hernia" and diagnosed irritable bowel syndrome and a spastic colon. On March 2, 2017, the physician noted, "indication for repair umbilical hernia lacking." On May 4, 2017, the physician noted he would request surgical opinion at the next collegial review. On May 11, 2017, a physician presented Plaintiff's case at collegial review, noting Plaintiff's chronic abdominal pain is not localized to the umbilical hernia area. On May 12, 2017, the general surgical evaluation was denied and an alternative treatment plan of educating patient on weight loss and diet modification was recommended.

## Discussion

Defendants Dr. Shah, Dr. Butalid, and Dr. Lochard filed a Motion for Summary Judgment, asserting that they provided appropriate treatment for Plaintiff's medical needs and did not act with deliberate indifference. Defendant Roberson, the Warden at Lincoln who was added for purposes of effectuating any injunctive relief, also filed a Motion for Summary Judgment, arguing Plaintiff is not entitled to injunctive relief and that Plaintiff's claims against him in his official capacity and the request for injunctive relief are barred by sovereign immunity. Judge Daly's Report recommends that both Motions be granted.[1]

As Plaintiff filed a timely objection to the Report, this Court must undertake a *de novo* review of Judge Daly's findings and recommendations. 28 U.S.C. § 636(b)(1)(B), (C); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b); *see also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). De novo review requires the district judge to "give fresh consideration to those issues to which

---

[1] Plaintiff has been released on parole since he filed his Objection to the Report. He filed a Reply in which he indicates that an outside surgeon recommended surgical repair of his hernia on March 5, 2019 (Doc. 100). Although reply briefs are heavily disfavored in this District, the Court will allow it in this circumstance. Defendants' Motion to Strike the Reply (Doc. 101) is therefore **DENIED**.

specific objections have been made" and make a decision "based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion." *Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013). The Court "may accept, reject or modify the magistrate judge's recommended decision." *Id.* Consistent with these standards, the Court has conducted a de no review of those portions of the Report subject to objection.

Plaintiff objects to three aspects of the Report: the factual conclusion that Plaintiff's pain from 2010-2015 was unrelated to his umbilical hernia and that the hernia was first documented in December 2015; the omission of a "key detail" – that the CT Scan was only ordered after Plaintiff's wife called the IDOC regional coordinator and requested one: and, the conclusion that Defendants' treatment was "grounded in professional judgment" and that he was not denied adequate and reasonable medical care. (Doc. 97).

In response, Defendants argue that Dr. Shah, Dr. Butalid, and Dr. Lochard are not at fault for the abdominal pain Plaintiff suffered throughout his time at Danville Correctional Center (from 2010 to August 5, 2013). They also point to the variety of treatments and instructions they prescribed and contend their conservative non-surgical approach (even after the hernia was diagnosed) was a matter of medical opinion and judgment which does not give rise to a deliberate indifference claim.

Prison officials inflict cruel and unusual punishment in violation of the Eighth Amendment when they are deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To succeed on such a claim, an inmate must show (1) that he suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016). A

serious medical condition is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). The second element requires proof that the defendant knew of facts from which he could infer that a substantial risk of serious harm exists, and he must actually draw the inference. *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016).

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The dispositive question is whether there is any evidence from which a reasonable jury could conclude that Dr. Shah, Dr. Butalid, and Dr. Lochard were deliberately indifferent to Plaintiff's condition. "A medical professional acting in his professional capacity may be held to have displayed deliberate indifference only if the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir. 2008). Plaintiff has presented nothing that speaks to that issue.

Defendants' treatment decisions, while conservative, were not the simple mechanical repetition of the same ineffective advice as portrayed by Plaintiff—he received a number of different medications, was told to abstain from several different types of foods at different times, and was subjected to a number of tests seemingly appropriate for the conditions diagnosed. The fact that he continued to have pain is not determinative of whether those treatment decisions were a substantial departure from accepted professional judgment, practice or standards. Neither is his physician's recommendation for surgery after his release in 2019. Evidence that some medical

professionals would have chosen a different course of treatment is insufficient to make out a constitutional claim. *Petties*, 836 F.3d at 729 (*citing Steele v. Choi*, 82 F.3d 175, 179 (7th Cir. 1996)). Because Plaintiff has produced no evidence of what accepted professional judgment, practice or standards were for his condition, no jury would have a reasonable basis to judge whether Defendants' actions were a substantial departure from those standards.[2]

The Court has carefully reviewed Judge Daly's Report and Recommendation and agrees with her conclusion that Defendants Dr. Shah, Dr. Butalid, and Dr. Lochard's treatment of Plaintiff was grounded in professional judgment and Plaintiff was afforded adequate, reasonable medical treatment of his hernia. While Plaintiff disagrees with Defendants' treatment decisions, there is no evidence that Defendants acted with conscious disregard toward Plaintiff's condition. The Court also agrees that Defendant Roberson is entitled to summary judgment as there is no underlying claim upon which to award injunctive relief and because Plaintiff's release from prison renders the question of injunctive relief moot.

The Court **ADOPTS** Magistrate Judge Daly's Report and Recommendation (Doc. 96) in its entirety. Accordingly, Defendants' Motions for Summary Judgment (Docs. 87 & 89) are **GRANTED** and Plaintiff's claims are **DISMISSED with prejudice.** The Clerk of Court is **DIRECTED** to enter judgment accordingly and to close the case.

**IT IS SO ORDERED.**

DATED: March 16, 2020

s/ Staci M. Yandle
**STACI M. YANDLE**
**United States District Judge**

---

[2] Plaintiff notes that Judge Daly did not note his assertion that the July 2016 CT Scan resulted from his wife contacting the IDOC regional coordinator to request it. However, this fact has no bearing on the ultimate analysis.